UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DON RAGSDALE,

     Plaintiff,

v.              Case No. 18-CV-946

ANDREW M. SAUL[1],
Commissioner of Social Security,

     Defendant.

I.  DECISION AND ORDER

INTRODUCTION

  Plaintiff Don Ragsdale alleges that he has been disabled since October 1, 2013, due to a heart attack, arthritis, gout, diabetes, back problems, high blood pressure, kidney problems, skin fungus (both feet), and chronic pain. (Tr. 67.) In October 2014 he applied for disability insurance benefits. (Tr. 196-202; *see* Tr. 15.) After his application was denied initially (Tr. 67-75) and upon reconsideration (Tr. 76-88), a hearing was held before an administrative law judge (ALJ) on May 30, 2017 (Tr. 32-47). On August 2, 2017, the ALJ issued a written decision concluding Ragsdale was not disabled. (Tr. 15-23.) The Appeals

---

[1] As of June 4, 2019, Andrew M. Saul is the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), he is substituted as the named defendant in this action.

Council denied Ragsdale's request for review on April 18, 2018. (Tr. 1-3.) This action followed. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 3, 9), and the matter is ready for resolution.

**ALJ'S DECISION**

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. The ALJ found that Ragsdale "has not engaged in substantial gainful activity since October 22, 2014, the application date[.]" (Tr. 17.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.152(c), 416.920(c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a). The ALJ concluded that Ragsdale has the following severe impairments: "diabetes mellitus with diabetic nephropathy/chronic kidney disease; lumbosacral spondylosis without myelopathy; hypertension with history of myocardial infarction; osteoarthritis of the bilateral knees; history of gout; obstructive sleep apnea; obesity; and history of right shoulder torn bicep[.]" (Tr. 17.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 4, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d),

2

416.1526, 416.920(d) and 416.926) (called "The Listings"). If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month duration requirement, 20 C.F.R. § 404.909, the claimant is disabled. If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. The ALJ found that Ragsdale "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" (Tr. 17.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), "which is [his] 'ability to do physical and mental work activities on a regular basis despite limitations from [his] impairments.'" *Ghiselli v. Colvin*, 837 F.3d 771 (7th Cir. 2016) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1529, 416.929, SSR 96-4p. In other words, the RFC determination is a "function by function" assessment of the claimant's maximum work capability. *Elder v. Astrue*, 529 F.3d 408, 412 (7th Cir. 2008). The ALJ concluded that Ragsdale has the RFC

> to perform sedentary work as defined in 20 CFR 416.967(a) except requires work that is unskilled with one, two, or three step instructions that is non-fast rate production, defined as involving no conveyor belt or assembly line work; the claimant requires an environment with only occasional changes in the work setting; can lift and/or carry 5 pounds frequently with 10 pounds occasionally (for very little up to 1/3 of an 8-hour workday); can stand and/or walk (with normal breaks) for about 2 hours in an 8-hour workday but can do so for only 15 minutes at one time; can sit (with normal

3

breaks) for about 6 hours in an 8-hour workday but can do so for only 30 minutes at one time; needs a cane to ambulate; can perform pushing and pulling motions with the upper and lower extremities within the aforementioned weight restrictions for no more than two thirds of an 8-hour workday; needs to avoid overhead reaching with the right upper extremity; can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching for no more than two thirds of an 8-hour workday; needs to avoid hazards in the workplace such as moving machinery and unprotected heights; job responsibilities do not include the use of handheld vibrating tools; needs to be restricted to a "relatively clean" work environment, meaning stable temperatures, stable humidity, and good ventilation that allows [Ragsdale] to avoid concentrated exposure to dusts, fumes, gases, odors, and other pulmonary irritants; can perform each of the following postural activities occasionally: balancing, stooping, and crouching, but needs to avoid climbing, kneeling, and crawling; and requires work that, in addition to any regularly scheduled breaks, allows [Ragsdale] to be off task up to 10% per 8-hour workday due to the symptoms from his impairments and/or the ancillary effects of treatment for such impairments.

(Tr. 18.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1526, 416.965. Ragsdale's past relevant work was as a security guard. (Tr. 21.) The ALJ concluded that he "is unable to perform any past relevant work." (*Id.*)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering his RFC, age, education and work experience. At this step the ALJ concluded that, considering Ragsdale's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Ragsdale can perform. (Tr. 22.) In reaching that conclusion, the

4

ALJ relied on testimony from a vocational expert, who testified that a hypothetical individual of Ragsdale's age, education, work experience, and RFC could perform the requirements of bookkeeping, accounting, and audit clerks, e.g., ticket counter; general office clerks, e.g., document preparer; and reception and information clerks, e.g., telephone information clerk. (*Id.*) After finding that Ragsdale could perform work in the national economy, the ALJ concluded that he is not disabled. (Tr. 22-23.)

## STANDARD OF REVIEW

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'"

5

*L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

**ANALYSIS**

Ragsdale contends that: (1) the ALJ failed to incorporate all of Ragsdale's limitations in his hypothetical questions posed to the vocational expert; (2) substantial evidence does not support the ALJ's conclusion that Ragsdale would be off task no more than ten percent of the workday; (3) the ALJ failed to properly evaluate relevant evidence related to Ragsdale's back, lower leg, and knee pain; (4) the ALJ erred in his consideration of the combined effects of Ragsdale's impairments on his ability to perform postural activities; (5) the ALJ erred in his evaluation of Ragsdale's statements concerning the intensity, persistence, and limiting effects of his symptoms; and (6) the ALJ improperly relied upon occupations from the *Dictionary of Occupational Titles*. (ECF No. 18.)

**I.     Hypothetical Questions Posed to the Vocational Expert**

Ragsdale argues that the ALJ failed to include Ragsdale's limitation to unskilled work with one, two, or three step instructions in his hypothetical questions posed to the vocational expert. (ECF No. 18 at 9-12.)

The Court of Appeals for the Seventh Circuit has held that "[h]ypothetical questions posed to vocational experts ordinarily must include *all* limitations supported by medical evidence in the record." *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) (emphasis in original and internal citations omitted); *see Yurt v. Colvin*, 758 F.3d 850, 857

(7th Cir. 2014) ("[B]oth the hypothetical [question] posed to the [vocational expert] and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record."). "The reason for [this] rule is to ensure that the vocational expert does not refer to jobs the [claimant] cannot work because the [vocational] expert did not know the full range of the [claimant's] limitations." *Steele*, 290 F.3d at 942. "An exception therefore exists for cases in which the vocational expert independently learned of the limitations (through other questioning at the hearing or outside review of the medical records, for example) and presumably accounted for them." *Id.*

Although the ALJ found that Ragsdale "requires work that is unskilled with one, two, or three step instructions" (Tr. 18), he failed to include the limitation to "one, two or three step instructions" in his hypothetical questions posed to the vocational expert (Tr. 41-44). The Commissioner argues that Ragsdale "has not sufficiently explained how the unskilled work limitation did not accommodate [his] three-step tasks limitation." (ECF No. 19 at 4.) However, as Ragsdale points out, "the ALJ provided an RFC limitation to one-, two-, or three-step instructions … *in addition to* the unskilled limitation. It is an added, more restrictive limitation not provided to the vocational [expert]." (ECF No. 20 at 1.) (Emphasis in original and internal citation omitted.)

Without any evidence in the record indicating that the vocational expert reviewed Ragsdale's medical records, the court must remand. *See Young v. Barnhart*, 362 F.3d 995, 1005 (7th Cir. 2004) ("When the hypothetical question is fundamentally flawed because

7

it … does not include all of the limitations supported by medical evidence in the record, the decision of the ALJ that a claimant can adjust to other work in the economy cannot stand."). On remand, the ALJ shall include *all* of Ragsdale's limitations in his hypothetical questions posed to the vocational expert.

## II. Ten Percent Off-Task Limitation

Ragsdale argues that "[t]here is no evidence in the record or cited by the ALJ" that supports the ALJ's finding that Ragsdale would be off task no more than ten percent of the workday. (ECF No. 18 at 12-14.) Although the ALJ stated that he included the ten percent off-task limitation to account for Ragsdale's "pain complaints" (Tr. 21), he gives no explanation as to how he determined that ten percent of an eight-hour workday is sufficient. Since the ALJ's time off task limitation appears to be arbitrary, remand is necessary so that the ALJ may support that limitation with substantial evidence. *See Garner v. Berryhill*, No. 1:18CV211, 2019 WL 1324605, at *10 (N.D. Ind. Mar. 22, 2019).

## III. Objective Medical Evidence

Ragsdale argues that "[t]he ALJ seemed to misunderstand then nature of [his] low back and related leg condition and his right knee impairment." (ECF No. 18 at 14.) Specifically, he contends that the ALJ ignored a "finding from the 2015 MRI of epidural lipomatosis," part of an MRI showing a possible meniscus tear in his right knee, abnormal pain management exams, and parts of the 2017 physical therapy evaluation of his spine. (*Id.* at 14-16.)

The Commissioner concedes that "the ALJ did not articulate those findings in his decision," but argues that Ragsdale "overlooks the two-state agency physicians[,] who elicited the only medical opinions of record[,] reviewed the evidence, including the records [Ragsdale] cites in his brief[,] and found that [Ragsdale] was capable of light to sedentary work." (ECF No. 19 at 6.) He contends, "[g]iven that the ALJ relied on the state-agency doctors' opinions, the evidence that they considered 'factored indirectly into the ALJ's decision as part of the doctors' opinions.'" (*Id.* (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).)

Although it might be true that the evidence ignored by the ALJ was indirectly factored into the ALJ's decision as part of the doctors' opinions, the ALJ on remand shall consider the extent of Ragsdale's impairments in light of *all* the relevant medical evidence in the record, including the 2015 MRI of his lumbar spine (Tr. 805); the 2013 MRI of his right knee (Tr. 485-87); a pain management exam showing lumbar and sacroiliac tenderness, reduced range of motion, and a positive FABER sign (Tr. 1240); and the 2017 physical therapy evaluation of his spine (Tr. 1290-92).

### IV. Combined Effects of Ragsdale's Impairments

Ragsdale argues that "the ALJ made a glaring … omission by failing to note [his] BMI." (ECF No. 18 at 19.) He contends that "[t]he ALJ cannot have properly evaluated the impact of [his] obesity in combination with his other impairments as required, without even acknowledging its degree." (*Id.*) However, contrary to Ragsdale's

9

contention, the ALJ acknowledged that Ragsdale is morbidly obese (Tr. 20), which is the classification given for a person with a BMI above forty, *see Browning v. Colvin*, 766 F.3d 702, 704 (7th Cir. 2014) (finding that a person with a BMI above forty is classified as morbidly obese). As a result, the ALJ did not fail to properly consider the extent of Ragsdale's obesity.

Ragsdale also argues that there is significant evidence of his inability to stoop or crouch (ECF No. 18 at 19-20), contrary to the ALJ's statement that "there is no indication that [Ragsdale] cannot stoop or crouch" (Tr. 19). While that might be true, any error by the ALJ with respect to Ragsdale's ability to stoop or crouch was harmless. The vocational expert testified at the May 2017 hearing that an individual "limited to never stooping or crouching" could still perform the jobs the vocational expert identified. (Tr. 45.)

Ragsdale further argues that "the ALJ did not explain how [he] can occasionally balance as required by the RFC." (ECF No. 18 at 20-21.) However, the ALJ gave some weight to state-agency consultants Dr. Mina Khorshidi, who opined that Ragsdale has no postural limitations (Tr. 73), and W. Wells, who opined that Ragsdale is limited to occasionally balancing (Tr. 86). (Tr. 21.) As such, substantial evidence supports the ALJ's conclusion that Ragsdale has the ability to occasionally balance. *See Buckhanon v. Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010) ("The ALJ expressly relied upon the medical judgment of the state-agency consultants, and their uncontradicted opinions constitute substantial evidence.").

## V. Symptom Evaluation

In making his RFC determination, the ALJ must engage in a two-step process to evaluate a claimant's symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304 at *3; *see* 20 C.F.R. § 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities …." SSR 16-3p, 2017 WL 5180304 at *3. The ALJ's evaluation of a claimant's symptoms is entitled to "special deference" and will not be overturned unless it is "patently wrong." *Summers*, 864 F.3d at 528 (citing *Eichstadt v. Astrue*, 534 F.3d 663, 667-68 (7th Cir. 2008)).

Ragsdale testified that "he is unable to work due to diabetes, gout, back issues, arthritis, kidney failure, and knee issues." (Tr. 19.) "He alleged increased arthritic pain, difficulty using the upper extremities, and difficulty walking on appeal," and his "representative contended [that] he has to elevate his legs 50% of the day and cannot stoop or crouch[.]" (*Id.*)

The ALJ found that Ragsdale's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms; however, [Ragsdale's]

11

statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 19.) He explained in part:

> [Ragsdale's] pain complaints have not pushed him past conservative treatment and have not pushed him to comply with recommendations for exercise or therapy. These inconsistencies suggest it is not disabling in severity. …. The file does not corroborate his testimony that he uses a recliner to recline and elevate the legs daily. ….
>
> [Ragsdale's] testimony is not fully consistent with the medical evidence. The records show non-compliance with treatment, which undercuts [Ragsdale's] assertions that he is debilitated. The treatment is generally conservative. He has not required more aggressive treatment, which would be expected with disabling conditions or pain. Furthermore, the imaging has shown at most mild to moderate abnormalities, and the physical exams show intact strength and motion. [Ragsdale] admitted in the file that pain medications improve his functioning, and he is at the gym biweekly. His statement that he is too busy for treatment suggests retained ability for other activities consistent with work. Moreover, there is no medical opinion indicating he cannot work. The undersigned is unconvinced [Ragsdale] is disabled.

(Tr. 21.)

Ragsdale argues that the ALJ assessed his symptoms under a higher standard— "not entirely consistent with the medical evidence and other evidence" (Tr. 19) and "not fully consistent with the medical evidence" (Tr. 21)—than required by the regulations— "reasonably … accept[able] as consistent with the objective medical evidence and other evidence," 20 C.F.R. § 416.929(a); SSR 16-3p, 2017 WL 5180304 at *2. (ECF No. 18 at 24-26; *see Justin H. v. Berryhill*, No. 2:18CV383, 2019 WL 2417423, at *12 (N.D. Ind. June 7, 2019); *Minger v. Berryhill*, 307 F. Supp. 3d 865, 872-73 (N.D. Ill. 2018); *Farley v. Berryhill*, 314 F.

Supp. 3d 941, 946 (N.D. Ill. 2018).) The commissioner disputes that the ALJ applied a higher standard, arguing that "a commonsense reading" of the statement that Ragsdale's symptoms were not "entirely consistent with the medical evidence and other evidence" was as a declarative statement of fact rather than as a conclusory statement. (ECF No. 19 at 12-13.)

It is not clear what the ALJ intended to say. On remand, the ALJ shall determine whether Ragsdale's statements concerning the intensity, persistence, and limiting effects of his symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence" in the record. 20 C.F.R. § 416.929(a). As part of that determination, the ALJ shall reconsider Ragsdale's noncompliance with treatment in light of his entire medical record.

## VI. Occupations from the Directory of Occupational Titles

At step five of the sequential evaluation process the ALJ relied on testimony from the vocational expert, who testified that a hypothetical individual of Ragsdale's age, education, work experience, and RFC could perform the requirements of "bookkeeping, accounting, and audit clerks, e.g. ticket counter (DOT # 219.587-010); general office clerks, e.g. document preparer (DOT #249.587-018), and reception information clerks, e.g. telephone information clerk (DOT # 237.367-046). (Tr. 22; *see* Tr. 43.)

Ragsdale argues that "the vocational [expert] misleadingly hid the nature of [each of the jobs he identified] by using a broad job category and incorrect job title." (ECF No. 18 at 21-24.) He contends:

> [The vocational expert] offered the job of "ticket counter" as a position within the broad category of "bookkeeping, accounting, and audit clerks." Tr. 43. The [*Dictionary of Occupational Titles*] code he cited, however, was "Parimutuel-Ticket Checker," a race track position tallying and verifying gambling tickets. DOT 219.587-010. Common sense tell us that this is now a computerized task. …. Nevertheless, the ALJ accepted the unreasonable testimony that there are 63,000 people employed as such "ticket counters." Tr. 22.
>
> Similarly, the vocational expert concealed a microfiliming job behind the category of "general office clerks" and the job title "document preparer." Tr. 22. The job is actually really a "Document Preparer, Microfilming." DOCT 249.587-018. Microfilminig is obsolete. …. It is an analog storage system superseded in the modern world by digital imaging. The ALJ unreasonably accepted the testimony that 90,000 persons perform a job that involves cutting paper to size so that another worker can photograph them and then uses folders and index cards for company files. DOT 249.587-018.
>
> Last, the vocational witness identified the job of "telephone information clerk" within the category of "reception and information clerks." Tr. 43. The [*Dictionary of Occupational Titles*] job title cited is, however, "Telephone Quotation Clerk," a job in which an individual "[a]nswers telephone calls from customers requesting current stock quotations and provides information posted on electronic quote board." DOT 237.367-046. That job too is obsolete. …. In the era of online investing, calling your broker for stock prices is as outdated as stock market ticker tape. It is certainly not common enough to employ 88,000 individuals, as the ALJ unreasonably accepted as a reliable figure. Tr. 22.

(*Id.* at 22-23.)

However, as the Commissioner argues, Ragsdale failed to "ask any questions about the specific jobs the vocational expert identified and did not challenge the

vocational expert's reliance on the [*Dictionary of Occupational Titles*]" during the May 2017 hearing. (ECF No. 19 at 11.) As a result, Ragsdale forfeited his argument challenging the vocational expert's testimony. *See Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016) (finding that claimant forfeited his arguments regarding the vocational expert's testimony "by failing to object to the expert's testimony during the [administrative] hearing"); *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009) ("Where, as here, the [vocational expert] identifies a significant number of jobs the claimant is capable of performing and this testimony is uncontradicted (and is otherwise proper), it is not error for the ALJ to rely on the [vocational expert's] testimony); *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004) ("[B]ecause [the claimant's] lawyer did not question the basis for the vocational expert's testimony, purely conclusional though that testimony was, any objection to it was forfeited."). Nonetheless, on remand Ragsdale will have an opportunity to challenge the jobs identified by the vocational expert during a second administrative hearing.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 8th day of July, 2019.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge